is 20-1802 Uniloc vs. Verizon. Mr. Biloli, whenever you're ready. Good morning, your honors. May it please the court, Mark Biloli for the appellant. This appeal concerns the construction of the term resynchronization marker in the 118 patent. Uniloc has identified two incorrect aspects of the district court's construction. The district court, Verizon, and Uniloc all look to the same portion of the specification with respect to these two issues, and that is the critical section of the specification for all issues on appeal. That section is column 4, lines 47 to 65. The first incorrect aspect of the district court's construction I would like to address is the for all... Counsel, before you get into the construction, and maybe this is putting my district court hat on, but I always hate to be the only one in the room who doesn't really know what's going on, and so my question is trying to determine why these fine distinctions matter. So you allege in the complaint that Verizon infringes because its devices practice the H.264 standard, and then ultimately you guys agree that there's no infringement based on the court's claim construction. So are you saying that the court's claim construction renders the 118 inconsistent with the standard, or are you saying that because of this it's clear that the Verizon doesn't really practice the standard? So I'd put it a touch differently, Your Honor. So the construction, the part that the parties agree on, is you have this sequence of bits that can do two things, serve as a resynchronization point and an error concealment reconstruction point for these excluded macro blocks, these little pieces of a frame of video, and the requirement that you essentially need to have this single omnibus resynchronization marker that can handle all modes of coding instead of you could have different resynchronization markers for the different modes of coding, or you could have a resynchronization marker that handles all modes of coding. Are there more than just the three modes that are identified? There are the three modes, and then there's variations of those modes as well. So it's your position, so the H-264, does it have a resynchronization that addresses only singular modes? Yes. Only one? Yes, the standard. So that's different than the flag? Well, these are flags. These can be called flags. Okay. And so you would have, you could have flags in the standard and work thing in the patent as well, that you have these flags that could be for one mode, two modes, all three modes, or variations, but there's no omnibus marker in the H.264 standard that covers all three and variations thereof. And so the revised products don't cover all three and variations thereof, right? The markers that we would be pointing to for our infringement read don't cover all of them, correct. They cover one or maybe two, but not all three and all variations thereof. I'm sorry, Your Honor. This is Judge Crow. So you're saying the invention, notwithstanding statements about the invention, the invention means that the method does not have to work for the I, P, and B modes? No, it could. What we're saying is you could have three kinds of resynchronization markers. You could have one for I, one for P, one for B. You could have one that does two of the three. You could have one that does all three. It's like saying it would be infringing if you only did one. Correct. So you'd meet the limitation. In that instance, the invention wouldn't work for all modes, but it would still be infringing. Correct. And so we would think that an invention is coming that necessarily, and I think this is what the district court construed it as, that the you're wrong. And you're just saying it doesn't have to work for all three. If it works for one, it's covered by the claim. Not that the method... Ali, I'm trying to figure out what's going on here. Yes, the method could be read on all three modes, but the resynchronization marker, the marker itself, is a sequence of bits. And that sequence of bits has to do this concealment reconstruction function, but it doesn't have to qualify as a resynchronization marker. It doesn't have to... That single set of bits doesn't have to be able to do it for all three modes. So if you had a car with tires, and you have rain tires, snow tires, regular tires, you're not... And the specification says you could use this invention with any of those three. You don't have to have... The claim doesn't mean the tires have to be all three of those, would be the analogy. So if you're only working... If you're only... If you're alleged infringer, and you're only working on the P mode, that would be infringing conduct? The P mode, if the flag that you're pointing to for the infringement read serves as a resynchronization point and serves as an error concealment reconstruction point for an excluded macro block, in the P mode, then it would be a resynchronization marker, as opposed to this other prior art flag that's contrasted in the beginning of that critical section of the specification, which wasn't for reconstruction, and it was only used in a specific instance. So you don't point to this, but is it significant that the word or is used rather than and? I think that there's three things significant in that sentence. One is the or, one is the word possible, and the other one is does not entail the insertion of any specific flag. When you limit the you are limiting it to a very specific flag, one that covers everything. It precludes the existence of different flags that would be covered by the resynchronization marker, because you're limiting it to one kind of flag, one that has these two functions, resynchronization and reconstruction, but for all modes. So now you've limited it to one specific flag, which is contrary to that sentence that says it does not entail insertion of any specific flag, and it's possible that you could have these resynchronization markers for I, P, or B coding. Okay, but you didn't point the court to the or language, did you? When you tried to say that somehow that, you know, changed the concept of what all modes means? Well, the briefing, are you saying at the district court level, Your Honor? Yes. Well, you didn't argue to us either. Well, page, I believe it's page 17 of our opening brief, we highlight that at the top. 17 of your opening brief here? Yes, Your Honor. Okay. All right. We're going to say it's possible for all modes, I, P, or, and we put emphasis on the or there as well. This specific issue was not briefed to the district court. I'm sorry, this is Judge Prowse. Just to be clear, I'm looking at page 17, and I see we're at the top. You highlighted the or word, but in the sentence that follows that you're talking about it, I don't see you're talking about anything other than possible. Yeah, Your Honor, it's possible for each of those, but it's not mandatory that in order to qualify as a that it necessarily covers all of them, because then you're limiting it to that specific flag, or to a specific flag, and that same sentence is clear that this invention does not entail the insertion of any specific flag. You could have, it's possible to have them for I, P, or, B, or any combination thereof. Anything further? Do you want to? Yes. If there's nothing further from the panel on the all modes issue, the disclaimer issue, the construction should also reflect the disclaimer from the same portion of the specification, which contrasts itself with the invention. The disclaimer is disclaiming this MPEG-4 uncoated flag, which is not used for reconstruction. It's merely an indicator to replace an uncoated macro block with the same macro block in a prior frame. It's only to be used with one form of coding, and is only useful in a certain context within that type of coding. And when you're replacing one block with the same block as before, there's no movement going on, no texture change, and this portion of the specification, and Verizon doesn't seem to disagree, because they do contend that this flag is excluded by the specification, that there is a clear disclaimer of this one and that this portion should reflect the disclaimer of this prior art flag. Well, but just because you disclaim the prior art flag doesn't mean that what you're claiming doesn't encompass a broader invention than just, and not just limited to that disclaimer. We agree the claim does encompass a broader invention. It encompasses using resynchronization markers in any context they arise. But it doesn't require that the resynchronization marker itself to qualify has to be this one single stream of bits that's operable in the entire concealment reconstruction point for this excluded macro block. You could have a resynchronization marker that functions its way for one mode of coding, two modes of coding, or all modes of coding, but it would still be a resynchronization marker. It doesn't stop being a resynchronization marker just because it functions in one context. Putting it another way, a resynchronization marker, you could have many different, or at least several different kinds. I, P, or B, as long as it has the two critical functions about reconstruction and resynchronization and can function in that way, you could have different kinds of resynchronization markers. Putting aside the language of the claim, where in the spec does it make it clear that your choice of any one of them is possible and part of the invention? It's the same sentence of that same portion of the specification. At the end of the section, that's column four, lines 47 to 65. It's the last sentence of that paragraph. It's saying that the exclusion of macro blocks from coding according to the invention does not entail the insertion of any specific flag. When you read it, may I finish, Your Honors? Yes. I assume. I'm sorry. The exclusion of the macro blocks from coding according to the invention does not entail the insertion of any specific flag. When you read this, or when you import a requirement that it has to handle all modes of coding, you are limiting the invention to a specific flag, one that covers all modes of coding. But this sentence is clear that it's not limited to any specific flag, and it's possible to have flags that cover I, P, or B coding, as long as they meet the other requirements of the resynchronization marker, which are those two key aspects that no one disagrees with, which are serving as a resynchronization point and serving as an error concealment reconstruction point. Thank you. We'll restore a little rebuttal, and let's hear from Ms. Woodworth. Thank you, Your Honor. May it please the Court. This case is somewhat unusual in that both parties clearly do agree that there is a disavowal, and that it's based on the final paragraph of column four of the patent. The only question is what is the appropriate scope of that disavowal as it relates to the claim limitation, the resynchronization marker. Not one, but two district court judges have found that the appropriate scope is that the resynchronization marker must be used in order to mark excluded blocks of all three types of coded images. So the Verizon products, they don't practice the disclaimed type of flag, correct? That is correct, and I heard counsel concede, which is true, that following the standard, the standard is not set up for exclusion of macro blocks of all three types. There is no dispute that following the standard, one cannot exclude I type of macro blocks, for example. I would actually say, though, that there's a second part of it, which relates to the more conventional use of a resynchronization marker, which is that the resynchronization marker has to also serve as a resynchronization point. The aspect of the H.264 standard that Uniloc is pointing to, and this is at appendix page 005010, no, excuse me, 0050. This is from their complaint. What they're pointing to as a resynchronization marker is actually a skip flag. It serves one and only one purpose, which is to mark if there is an excluded macro block. It actually does not mark for purposes of resynchronization, to serve as a resynchronization point, and so we actually think that under the court's claim construction, there's two separate reasons that neither the standard nor any of Verizon's products that implement the standard can infringe as a matter of law. So under the standard, you're only excluding, what, P, or are you able to exclude the others? I don't think that there's any evidence on that. I think that what we know is that it's not possible to exclude I. The reason for that and the reason that I hesitate is that it actually has to do with the way that you are going to reconstruct the types of coded images, and I images have to be reconstructed using spatial recognition. So the information has to be within the image itself, and so there's no question that that type of reconstruction, which has to be performed on I-coded images, is not possible in the standard. Okay. Thank you. So I do want to talk, though, about what is the appropriate disavowal and why the district court judges got it right. I agree with counsel that we need to look at the last paragraph of column four, where first I want to draw the court's attention to actually the last sentence of that, where it has the key words, which are according to the invention. This is not according to embodiments of the invention or certain aspects. This is what the invention is, and that sentence reads, the exclusion of macro blocks from coding according to the invention does not entail the insertion of any specific flag, and the exclusion of macro blocks from coding is thus possible for all modes of I. We had a little discussion. This is Judge Prowse. We had a little discussion with your friend about the import of the word or. I must say I read it as inclusive, so it didn't trouble me. It's like saying I have no dietary restrictions, so I can eat nuts, dairy, or wheat. Is that the way you read it? That's exactly the way that I read it, Your Honor, and I think that that is grammatically correct. Might it be more clear if the word and was there? Yes, but we think that it is clear as it's written, and certainly if you look at the key language, which is all modes, there is absolutely no ambiguity that what you're talking about is every one of the modes that follow, and the second point that I think brings this home, and this is really what Judge Gilstrat focused on, is where it's earlier in the paragraph disparaging the prior art. There's a very parallel structure in what's set up about the problem of the prior art and then ultimately the solution that this invention brings, and that's again at column four, lines 55 to 56, where it says that as a consequence, this prior art MPEG-4 standard flag can only be used for P-coded images. So that's the problem. That's the problem that we're trying to solve is that it can only be used for a certain type of coding, and what this invention solves, and we know that because going to the end of the paragraph, we're talking about coding according to the invention, is that it is now possible for all modes of coding. The problem was it could only be used for P-coded. The solution is that it's now possible for all modes of coding. So any potential ambiguity with the word or is certainly in context with the words all modes, very clear that it has to encompass all. Is there any discussion? I mean, I see in that discussion that they say one of the reasons it's bad to have just P-coded images is because those very images are implicitly echoed in B-coded images, which makes sense. So is there any discussion of I-coded images elsewhere in the specification? There is, and it's at column seven. And this is talking about all of column seven I think is very consistent with Verizon's position and what the district court judges found, which is that you have to have a resynchronization marker that's going to work for all three types of coding. And there's two things within this column that I want to bring the court's attention to. The one is where it does talk about I-coding, and that's the paragraph that is at column seven and begins at line 32. And this, again, is talking about once we have received the video packet, which we know is going to have excluded macro blocks, this is talking about it can be any of the three types. It says we might have I for intra-coded, or we might have externally coded images P or B. I'm referencing the lines 42 to 45. And what this paragraph is talking about is that the decoder is going to be able – the resynchronization marker has marked that we've got an excluded block, but there's nothing in that resynchronization marker that tells us which type of image is it. So what we have to do, according to this paragraph, is actually try and test various types of error concealment. And that was from line 49. It actually refers to that as an advantageous part of the embodiment that's presented here, is that you can try and test various types of error concealment. We know that it works for all three types. And if there was a flag that was only for I-coded images, we wouldn't need to do this trial and error because we would know that you have to be doing spatial reconstruction. And so this part of the specification, which does talk about using all three types, is consistent only with the resynchronization marker that is marking all three types. Ms. Woodworth, Judge Plagria, the district court didn't like your definition of resynchronization, but they didn't like the plaintiff's either. So it came up with its own, which it's entitled to do. How does the district court's definition of reconstruction, of resynchronization marker, differ from the one you offered? So it's similar to the one that we offered in one important way, which is that it has to be a resynchronization marker that can serve the dual purpose that we talked about, which is the conventional purpose of serving as a resynchronization point, and then the new added purpose, which is for error concealment and reconstruction, that you are going to actually mark if there's an excluded macro block. So that was something that Verizon argued for below and is consistent with what the district court judge did. The second part of its construction, which is that it has to mark that exclusion for all modes of coding, was actually, it's in line with the disavowal that we urged below, but we had just urged it in connection with another part of the claim. We had urged that the preamble, which refers to coding a digital image, needed to be construed consistently with the disavowal to perform coding for all types of digital images. And what Judge Gilstrap found was that this part of the specification that the parties agreed was a disavowal was more clearly linked with the resynchronization marker and the way that you mark the exclusion of macro blocks than to the types of digital images. And so his overall construction was consistent with the various aspects that we were putting forward. We had just urged it in connection with a different part of the claim. So he ended up giving you a little bit more than you actually asked for. I would say that he just put it in a different part of the claim, but I think that it is consistent with what we asked for, and it was what led to the non-infringement stipulation. The final point that I want to make is that counsel had referred to in his argument that there are variations of those modes, variations of I, P, and B coding. There's absolutely nothing in the record that supports that. There's nothing in the intrinsic record that supports it, and both UNILOC and Verizon submitted declarations here, and there was nothing that UNILOC can point to from either of those declarations that support that there are multiple types of modes of each coding, such that that's how you could construe the all modes of coding. The other thing that he said is that the first part of that disavowal sentence that's describing the invention says that you cannot have any specific flag, and UNILOC argues that that means you cannot have a resynchronization marker that's used for all three types of coding. Somehow that would be a specific flag, whereas UNILOC's position that you have a resynchronization marker that works only for I or only for P would not be a specific flag. There's no reason to justify that. If anything, a flag that marked only I images or only P images is a more specific flag and serves a more specific purpose than a resynchronization marker that can work for any type of coding. Finally, the point that if that's what we have, if we have a system where you have a different type of resynchronization marker that can work for I and that can work for P and that can work for B, and I want to focus on P here for a second, we have exactly what the patent said was bad about or the problem with the prior art. If we have a resynchronization marker that can only be used for coded images, that is what column four, lines 54 through 55, was describing as the problem with the MPEG-4 standard. This patent had two improvements over that standard. The first is that it added the dual purpose. It was no longer requiring a flag that served only the purpose of marking excluded blocks. Instead, it was going to reuse the existing resynchronization points or resynchronization markers for that purpose. And then the second is we were going to make it possible with that resynchronization marker for all modes of coding. That is consistent with the district court judge's construction of the term, and for that reason, unless there are any further questions, we ask that the judgment be affirmed. Thank you. Mr. Beloli, will we store two minutes of rebuttal in case we've eaten into that? I'm not sure yet. Thank you, Your Honor. The first point I'd like to address is this notion that there's no evidence that there's multiple modes for each of I, P, or B. That critical section of the specification clearly says there are. When it says, is thus possible for all modes of I, P, or B coding, that necessarily implies that there are multiple modes for each of I, P, or B. And, again, this is saying that it's possible to have a resynchronization marker for any one of those modes. But, again, this sentence isn't mandating that this single sequence of bits must cover all modes of coding for each of those types of images. This sentence clearly implies that there can be many different modes for each of those and that there is no specific flag that covers all of those modes. One last point on the issue of the word or, whether it was argued, again, we pointed the court to page 17 before. Page 20 of the opening brief as well, which cites to the bottom of page 20, also talks about this, that this sentence that I just discussed is not stating or implying that all modes of I coding are covered, all modes of P coding, and all modes of B coding are covered by a single resynchronization marker. It's just stating a benefit of the invention, which is you could have a resynchronization marker for each of these different kinds of modes. And I'd like to thank the panel. Thank you. We thank both counsel and the cases submitted.